## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

CAROLYN MCCABE and JASON ) 
WARD, on Behalf of Themselves and All ) 
Others Similarly Situated ) 
)
          Plaintiff, )
)
vs. )  Case No.:
)
SAMSUNG ELECTRONICS )  **DEMAND FOR JURY TRIAL**
AMERICA, INC., SAMSUNG )
ELECTRONICS CO., LTD, THE HOME )
DEPOT, INC., LOWE'S HOME )
CENTERS, LLC., BEST BUY CO., )
INC., SEARS HOLDING )
CORPORATION, )
)
        Defendants. )
_____ )

## <u>COMPLAINT-CLASS ACTION</u>

Plaintiffs Carolyn McCabe ("McCabe") and Jason Ward ("Ward" and collectively with McCabe referred to herein as "Plaintiffs"), by their attorneys, on behalf of themselves and the Class set forth below, allege the following upon information and belief, except for those certain allegations that pertain to Plaintiffs, which are based on Plaintiffs' personal knowledge.

## <u>NATURE OF THE ACTION</u>

1.    This action relates to the marketing and selling of certain defective Samsung home washing machines that have latent and inherent defects and Samsung's failed recall of these same washing machines. These washing machines "explode," or

1

suffer catastrophic failure during a given machine's normal usage because of a design defect and/or manufacturing flaw.

2.    On or about April 18, 2015, McCabe purchased one of the subject Samsung washing machines (model number WA52J8060AW/A2) from a Best Buy Co., Inc. store in Newington, New Hampshire.

3.    On or about August 29, 2014, Ward purchased one of the subject Samsung washing machines (model number WA45H7200AW/A2) from a Sears Holding Corp. store.

4.    On November 4, 2016, Samsung began a recall (Recall # 17-028) of 34 distinct models (the "Recalled Washing Machine(s)"), all being models of Samsung top-load washing machines, including the models purchased by Plaintiffs as described above. The stated reason for the recall is that "[t]he [Samsung] washing machine top can unexpectedly detach from the washing machine chassis during use, posing a risk of injury from impact." The recall bulletin further notes that "Samsung has received 733 reports of washing machines experiencing excessive vibration or the top detaching from the washing machine chassis. There are nine related reports of injuries, including a broken jaw, injured shoulder, and other impact or fall-related injuries." *See*, http://www.cpsc.gov/recalls/2017/samsung-recalls-top-loading-washing-machines.

5.    According to the Consumer Product Safety Commission (the "CPSC"), the remedies provided in Samsung's recall bulletin allow consumers the option of any one of the following: (1) an in-home repair or retrofit that includes reinforcement of the washer's top and a free one-year extension of the manufacturer's warranty; (2) a rebate to

be applied towards the purchase of a new Samsung or other brand of washing machine, along with free installation of the new unit and removal of the old unit; or (3) a full refund for consumers who purchased their washing machine within the past thirty days of the recall announcement. *See, id.*

6.      None of the options were available to Plaintiffs because: (1) the retrofit that Samsung proposes does not actually fix the machine so that Plaintiffs can use it as intended at sale; (2) the rebate is a fraction of the cost of replacement; and (3) Plaintiffs purchased their machines before the recall.

7.      Plaintiffs bring this action on behalf of themselves and other purchasers of the Recalled Washing Machines in the United States, its possessions, or territories from March 2011 to November 2016. Plaintiffs seek relief in the form of (1) an injunction against Defendants from any further sales of the Recalled Washing Machines and to take such other remedial action as may otherwise be requested herein; and (2) money damages to adequately and reasonably compensate owners of the Recalled Washing Machines who have, through no fault of their own, purchased defective and dangerous Samsung washing machines.

## PARTIES

8.      Plaintiff McCabe is a citizen and resident of the State Maine.

9.      Plaintiff Ward is a citizen and resident of the State of Maine.

10.     Defendant Samsung Electronics Co., Ltd. Is a South Korean corporation headquartered in Seoul, South Korea. On information and belief, Samsung Electronics Co., Ltd. designs and manufactures the Recalled Washing Machines that have been sold

3

to Plaintiffs and other consumers in this District. At all times relevant hereto, Samsung Electronics Co., Ltd. was in the business of distributing, marketing, promoting, and selling the recalled Washing Machines described herein throughout the United States and in this District. Thus, Samsung Electronics, Co., Ltd. purposely directed its conduct towards this District and at all times relevant engaged in a continuous course of business in this District by selling thousands of its washing machines and other consumer goods in this District every year.

11.    Defendant Samsung Electronics America, Inc. is a New York corporation with headquarters in Ridgefield Park, New Jersey and is a wholly-owned subsidiary of Samsung Electronics, Co., Ltd. Samsung Electronics America, Inc. is the warrantor of the products designed, manufactured, and distributed by Samsung Electronics Co., Ltd., and acts as Samsung Electronics Co., Ltd.'s agent in the processing of warranty claims related to defects in the manufacturing or materials used by Samsung Electronics Co., Ltd. during the manufacturing process. At all times relevant hereto, Samsung Electronics America, Inc. was in the business of distributing, marketing, promoting, and selling the Recalled Washing Machines described herein throughout the United States and in this District. Samsung Electronics America, Inc. engages in a continuous course of business in this District and based upon information and belief sells thousands of washing machines and other consumer goods in this District on an annual basis. Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. are referred to collectively herein as "Samsung."

4

12.    Home Depot, Inc. ("Home Depot") is a Delaware corporation with its headquarters in Atlanta, Georgia.  At all times relevant hereto, Home Depot was in the business of distributing, marketing, promoting, and selling the Recalled Washing Machines described herein throughout the United States and in this District.    Home Depot engages in a continuous course of business in, this District and, based upon information and belief, sells thousands of washing machines and other consumer goods in this District on an annual basis.

13.    Lowe's Home Centers, LLC, is a North Carolina limited liability corporation with its headquarters in Wilkesboro, North Carolina.  Upon information and belief, Lowe's Home Centers, LLC's managers are Lowe's Companies, Inc., Ricky Damron, Robert Hull, Ross McCanless, Robert Niblock, and Jennifer Weber. Upon information and belief, all of the managers of Lowe's Home Centers, LLC, aside from Lowe's Companies, Inc., are officers of Lowe's Companies, Inc. Upon information and belief, all managers of Lowe's Home Centers, LLC are citizens of the state of North Carolina. At all times relevant hereto, Lowe's was in the business of distributing, marketing, promoting, and selling the Recalled Washing Machines described herein throughout the United States and in this District.   Lowe's engages in a continuous course of business in this District and, based upon information and belief, sells thousands of washing machines and other consumer goods in this District on an annual basis.

14.    Best Buy Co., Inc. ("Best Buy"), is a Minnesota corporation with its headquarters in Richfield, Minnesota.  At all times relevant hereto, Best Buy was in the business of distributing, marketing, promoting, and selling the Recalled Washing

Machines described herein throughout the United States and in this District.  Best Buy engages in a continuous course of business in, this District and, based upon information and belief sells thousands of washing machines and other consumer goods in this District on an annual basis.

15.    Sears Holding Corp. ("Sears") is a Delaware corporation with its headquarters in Hoffman Estates, Illinois.  At all times relevant hereto, Sears was in the business of distributing, marketing, promoting, and selling the Recalled Washing Machines described herein throughout the United States and in this District.  Sears engages in a continuous course of business in, this District and, based upon information and belief sells thousands of washing machines and other consumer goods in this District on an annual basis.

16.    Samsung, Home Depot, Lowe's, Best Buy and Sears are referred to collectively herein as "Defendants."

## JURISDICTION AND VENUE

17.    This Court has original jurisdiction over this Class action pursuant to 28 U.S.C. § 1332(d)(2). The claims of the Class members are in excess of $5,000,000 in aggregate, exclusive of interest and costs, and at least one member of the Class is a citizen of a state different from at least one of the Defendants. For example, Plaintiffs McCabe and Ward are Citizens of the state of Maine and none of the Defendants are citizens of the state of Maine.

18.    This Court has jurisdiction over Defendants because they transact business in this state, have purposely availed themselves of the laws of this state, and because a

6

substantial part of the events giving rise to Plaintiff's causes of action occurred in this state. In addition, Plaintiff resides in this District. Therefore venue is appropriate pursuant to 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

19.     On November 4, 2016, Samsung announced a "recall involv[ing] 34 models of Samsung top-load washing machines.  The Recalled Washing Machines have mid-controls or rear-controls. [The model numbers and serial information can be found on two labels affixed to the back of the machine."  https://www.cpsc.gov/recalls/2017/samsung-recalls-top-load-washing-machines.   The stated reason for the recall is that "[t]he [Samsung] washing machine top can unexpectedly detach from the washing machine chassis during use, posing a risk of injury from impact."   The recall bulletin further notes that "Samsung has received 733 reports of washing machines experiencing excessive vibration or the top detaching from the washing machine chassis.  There are nine related reports of injuries, including a broken jaw, injured shoulder, and other impact or fall-related injuries." *See*, *id*.

20.     According to the CPSC, Samsung's recall allows owners of Recalled Washing Machines the option of any one of the following: (1) an in-home repair that includes reinforcement of the washer's top and a free one-year extension of the manufacturer's warranty; (2) a rebate to be applied towards the purchase of a new Samsung or other brand washing machine, along with free installation of the new unit and removal of old unit; or (3) a full refund for consumers who purchased their washing machine within the past 30 days of the recall announcement.

21.    On or about April 18, 2015, McCabe purchased one of the Recalled Washing Machines (model number WA52J8060AW/A2) from a Best Buy Co., Inc. store in Newington, New Hampshire. McCabe purchased her Recalled Washing Machine new for her home, and at the time it was in excellent condition without any perceivable damage or defect.  McCabe chose her Recalled Washing Machine specifically because it has a large tub so that she could wash blankets and bedding at home, avoiding having to use a laundromat. Moreover, McCabe used her Recalled Washing Machine solely for its intended purpose as a personal home appliance until November 4, 2016, when Samsung announced the recall.

22.    McCabe contacted Samsung regarding the recall, but none of the options were satisfactory as described in detail below.  When she contacted Samsung about the recall, she was given the choice of a "repair" or a $300 rebate toward to purchase of a new washing machine. Because the rebate was not adequate, McCabe, under the impression that the defects in her machine would be fixed, chose the repair option.

23.    When McCabe initially Samsung about a repair, she was told that there may be a long wait for her repair due to the large volume of repair requests from owners of Recalled Washing Machines. On Nov. 8, 2016 McCabe got a call from a repair person in Portsmouth, NH who scheduled her repair for November 10, 2016.

24.    After her Recalled Washing Machine was repaired, McCabe was still not able to use it for the purposes that she purchased it for. McCabe was not able to use her machine on the higher spin speeds. When McCabe called Samsung to express her

concern that she could no longer use her machine as intended, she was told to do smaller loads, to wash everything on low spin, and to "use common sense."

25.    When McCabe called the company who actually performed her "repair", the repair technician told her that, even with the repair, an uneven load could still cause damage.

26.    On or about August 29, 2014, Ward purchased one of the Recalled Washing Machines (model number WA45H7200AW/A2) from a Sears Holding Corp. store. McCabe purchased his Recalled Washing Machine new for his home, and at the time it was in excellent condition without any perceivable damage or defect.

27.    After the washing top of Ward's washing machine exploded due to the defects identified herein, causing damage to his Samsung dryer and the walls of his laundry room, he contacted Samsung to repair his machine. After three repair appointments were cancelled, without explanation, by Samsung, Samsung contacted Ward to inform him that his machine could not be repaired because they did not have a technician in his area. In reality, once the Recalled Washing Machines have experienced failure, they cannot be repaired. Samsung offered to "buy back" Ward's Recalled Washing Machine, but refused to compensate him for the damage to his dryer and the walls of his laundry room caused by the Recalled Washing Machine when it exploded.

28.    Without a functioning washing machine, Plaintiff Ward is forced to spend almost $500 per month at laundromats.

29.    None of the recall options were sufficient to correct the defects in the Recalled Washing Machines. In both Plaintiffs' circumstance, the third option was

9

unavailable because they had purchased the Recalled Washing Machine outside of the thirty (30) day period. The rebate option was also a poor option for both Plaintiffs because it provided them a fraction of the cost to purchase a new machine to replace their Recalled Washing Machines. Likewise, the repair option was not available to either Plaintiff because it did not actually repair the defects in McCabe's Recalled Washing machine and Ward's Recalled Washing Machine had already suffered unrepairable damage due to the defect.

30.    The repair option was also not viable for either Plaintiff because it did not actually repair the defects in McCabe's Recalled Washing machine and Ward's Recalled Washing Machine had already suffered unrepairable damage due to the defect. The repair option is not, in fact, a repair at all. To reduce costs, Samsung has contracted with local entities to reinforce or replace the top of the Recalled Washing Machines with a retrofit. Additionally, instead of using appliance repair companies to institute the retrofit, Samsung has hired local subcontractors who are more in the line of handymen. For example, in many areas, Samsung is using Dish Network subcontractors, whose job primarily consists of installing television satellite dishes on residences, to install the new washing machine top. In essence, Samsung does not use individuals qualified to repair or evaluate the safety of the Recalled Washing Machines. They simply come to your house and snap on a new top. Several consumers have claimed the process takes less than fifteen (15) minutes.

31.    In addition, it is difficult, if not impossible, to get Samsung to provide the repair option. When consumers request that Samsung repair their machine, it often takes

weeks or months for a repair person to come and make the retrofit, and sometimes Samsung has refused to provide the repair at all. As a result, regardless of the option consumers choose they, like Plaintiffs, are left with a Recalled Washing Machine that is unfit for use.

32.    As McCabe's situation demonstrates, the repair or retrofit offered by the recall does not fix the Recalled Washing Machines. The retrofit merely reinforces or replaces the top of the Recalled Washing Machine, but consumers are then advised that they cannot use the Recalled Washing Machine for many of its intended purposes, such as using the high cycles needed to wash bedding, towels and heavy garments. In essence, the retrofit may barely do enough to keep the Recalled Washing Machines from exploding, although that remains to be seen, but they do not make the Recalled Washing Machines fit for the purposes they were marketed and sold to accomplish.

33.    As a result, under the terms of Samsung's agreement with the CPSC, Samsung is required to fully refund or replace the washing machine. *See*, http://www.click2houston.com/consumer/feds-say-samsung-not-following-consumer-product-safety-commission-agreement. For this reason, and upon information and belief, Samsung is deliberately making it as difficult as possible for individuals to have their Recalled Washing Machines repaired because it exposes Samsung to having to make a full replacement once consumers discover that the repair is ineffective.

34.    Likewise, the rebates that Samsung offers to consumers are often a fraction of the cost that consumers actually paid for their washing machines, and after multiple frustrating interactions with Samsung, it becomes apparent that it is difficult, if not

impossible, to get Samsung to provide Plaintiffs and consumers with relief that would allow them to use their washing machines as they were marketed.

35.    After learning of Samsung's recall of the Recalled Washing Machines, Plaintiff McCabe was not able to use her Samsung washing machine as intended because of the danger posed from potentially having her washing machine "explode" during normal use.  In addition to being without a working washing machine, forcing him to spend almost $500 per month at laundromats, Plaintiff Ward has been forced to spend frustrating time with Samsung attempting to resolve his problems with his Recalled Washing Machine.

## THE RECALLED WASHING MACHINES

36.    The Recalled Washing Machines at issue in this action all have high-speed "direct-drive" mechanisms that spin the washer tub at speeds of approximately 1100 revolutions per minute.  The framing and dampening system of the Recalled Washing Machines is inadequate to withstand the force generated by each such machine's direct drive system.

37.    The models of Samsung's Recalled Washing Machines include the following:

```
WA40J3000AW/A2   WA45H7000AP/A2  WA45H7000AW/A2
WA45H7200AW/A2   WA45K7600AW/A2  WA45K7100AW/A2
WA48H7400AW/A2   WA48J7700AW/A2  WA48J7770AP/A2
WA48J7770AW/A2   WA50K8600AV/A2  WA50K8600AW/A2
WA52J8700AP/A2   WA52J8700AW/A2  WA400PJHDWR/AA
WA422PRHDWR/AAWA456DRHDSU/AAWA456DRHDWR/AA
WA476DSHASU/A1  WA476DSHAWR/A1WA484DSHASU/A1
WA484DSHAWR/A1 WA48H7400AP/A2   WA50F9A6DSW/A2
WA50F9A7DSP/A2   WA50F9A7DSW/A2 WA50F9A8DSP/A2
```

WA50F9A8DSW/A2  WA52J8060AW/A2  WA5451ANW/XAA
WA5471ABP/XAA    WA5471ABW/XAA  WA56H9000AP/A2
WA56H9000AW/A2

38.    The Recalled Washing Machines range in price from approximately $550.00 to $1500.00 and come with an express one-year manufacturer's warranty.

39.    As explained above, this case involves Recalled Washing Machines that, in many instances, "explode." When the Recalled Washing Machines explode, they do so with such force that the machines are irreparably damaged. Indeed, the force of the explosion is capable of seriously injuring people and damaging property, rendering the Recalled Washing Machines unsafe for ordinary use.

40.    Because of the inherent safety risk, the recall now includes a "Home Label Kit" or stickers that state that "consumers should only use the delicate or waterproof cycles when washing bedding, water-resistant and bulky items. The lower spin speed in the delicate or waterproof cycles lessens the risk of the washing machine top unexpectedly detaching from the washing machine chassis." *See*, https://www.cpsc.gov/recalls/2017/samsung-recalls-top-load-washing-machines. However, even on the lower spin speeds, the Recalled Washing Machines are still dangerous and able to vibrate to the point where it breaks the glass in the lid.

41.    Even if a consumer is able to have Samsung "repair" their defective washing machine, they are still unable to use it for its intended purpose. After the repair is completed, Samsung advises consumers not to use the washing machines on heavy settings that would typically be used to wash bedding or heavier garments. In essence,

Samsung has left consumers with the choice of using a defective product for the life of the product (regardless of whether the recall's reinforcement measures are applied or not), accepting a rebate that is often well below the amount it costs to actually replace a defective machine, or simply doing without.

42.    The defects in the Recalled Washing Machines are latent defects respecting the design of the machines and/or the manufacturing process related to the Recalled Washing Machines and such defects would not reasonably be discoverable by consumers when purchasing any of the Recalled Washing Machines.  These latent defects relate principally to the Recalled Washing Machines having structural and design defects in their framing and dampening systems which can cause the tubs to loosen and become projectiles over time.  Such defects in the Recalled Washing Machines manifest only after the point of sale and such manifestation often occurs outside of Samsung's express warranty period of one year.

43.    In selling the Recalled Washing Machines, Samsung provided a uniform, express one-year factory warranty against manufacturing defects in materials and workmanship.  This express warranty further protects against defects in the tub for three years, as well as defects in the direct drive system for 10 years.  The warranty for the Recalled Washing Machines is offered on a take-it-or-leave-it basis, and consumers are not afforded an opportunity to negotiate for more favorable terms in the warranty because of the parties' relative bargaining power. In addition to the express warranty described above, Samsung marketed, advertised, and warranted that the Recalled Washing Machines were of merchantable quality and fit for their intended purpose.  Samsung

further marketed, advertised, and warranted that the Recalled Washing Machines were free from defects and the Recalled Washing Machines did not pose an unreasonable risk to persons or property.

44.     Samsung knew that the Recalled Washing Machines were prone to explosion and, therefore, that the Recalled Washing Machines were inherently defective, unmerchantable and unfit for their intended use.  Beginning as early as 2011, Samsung received high numbers of consumer complaints related to the Recalled Washing Machines for problems with their spin cycles, high vibrations, breaking springs, and even explosions related to the Recalled Washing Machines' spin cycles.  Moreover, Samsung has known that the exploding Washing Machines cause actual physical injury to consumers since no later than approximately October 24, 2013, when a woman in California was physically injured by a Samsung Washing Machine explosion.  This incident lead Samsung to inspect her washing machine on November 22, 2013.

## CLASS ALLEGATIONS

45.     Plaintiffs bring this suit as a class action on behalf of themselves and on behalf of others similarly situated pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and/or 23(b)(3) (the "Class").  The proposed Class consists of:

> All residents of the United States and its territories or possessions who purchased a new Recalled Washing Machine or otherwise acquired a Recalled Washing Machine from March 2011 to November 2016, primarily for household use and not for resale.

46.     McCabe and Ward also bring this suit as a class action on behalf of the following subclass ("Maine Subclass"):

All residents of the State of Maine who purchased a new Recalled Washing Machine or otherwise acquired a Recalled Washing Machine from March 2011 to November 2016, primarily for household use and not for resale.

47.    Unless otherwise indicated, the Class and the Maine Subclass are referred to herein jointly as the "Class."

48.    The members of the Class are so numerous that joinder is impracticable. Samsung is one of the largest manufacturers of residential washing machines in the world and it sells many thousands of residential washing machines annually in the United States and in the State of Maine through retailers such as Lowe's, The Home Depot, Best Buy and Sears.    The CPSC estimates that 2.8 million Recalled Washing Machines have been sold on the market.

49.    Plaintiffs' claims are typical of the claims of the entire Class because Plaintiffs' purchased new Recalled Washing Machines in April 2015 and August 2014, respectively.

50.    Plaintiffs will fairly and adequately represent and protect the interests of the other Class members for purposes of Federal Rule of Civil Procedure 23(a)(4).    Plaintiffs have no interests antagonistic to those of other Class members.    Plaintiffs are committed to the vigorous prosecution of this action and have retained counsel experienced in litigation of this nature to represent them.

51.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members of the Class, including, but not limited to:

16

a.     whether the Recalled Washing Machines pose unreasonable safety risks to consumers;

b.     whether Defendants knew, or should have known, that the products it sold into the stream of commerce pose unreasonable safety risks to consumers;

c.     whether Defendants concealed the safety risks that the Recalled Washing Machines pose to consumers;

d.     whether the safety risks that the Recalled Washing Machines pose to consumers constitute material facts that reasonable purchasers would have considered in deciding whether to purchase a washing machine;

e.     whether the Recalled Washing Machines possess material defects;

f.     whether Defendants knew or should have known of the inherent defects in the Recalled Washing Machines when it placed them into the stream of commerce;

g.     whether Defendants concealed the defects from consumers;

h.     whether the existence of the defects are material facts reasonable purchasers would have considered in deciding whether to purchase a washing machine;

i.     whether the Recalled Washing Machines are merchantable;

j.     whether the Recalled Washing Machines are fit for their intended use;

k.     whether Defendants were unjustly enriched by the sale of defective Recalled Washing Machines to the Plaintiff class;

l.     whether any false warranties, misrepresentations, and material omissions by Samsung concerning its defective Recalled Washing Machines caused Class Members' injuries; and

m.     whether Defendants should be enjoined from further sales of the Recalled Washing Machines.

52.     Class certification under Federal Rule of Civil Procedure 23(b)(3) is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by individual Class members may be relatively

small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged.  Plaintiffs know of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

53.     Class members have suffered and will suffer irreparable harm and damages as a result of Defendants' wrongful conduct.

**FIRST CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**AGAINST ALL DEFENDANTS**

54.     Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

55.     The Recalled Washing Machines owned by Plaintiffs and Class Members were defectively designed and manufactured and pose serious and immediate safety risks to consumers and the public.

56.     These defects were present in such machines at the point of sale of the Recalled Washing Machines.

57.     Such defects place consumers and the public at serious risk for their own safety when the Recalled Washing Machines are used in consumers' homes.

58.     At all times relevant hereto, Samsung, Lowe's, The Home Depot, Best Buy, and Sears were under a duty imposed by law requiring that a manufacturer's and merchant's product be reasonably fit for the ordinary purposes for which the product is used, and that the product be acceptable in trade for the product description. This implied warranty of merchantability is part of the basis for the bargain between Samsung,

18

Lowe's, The Home Depot, Best Buy and Sears, on the one hand, and Plaintiffs and Class Members, on the other.

59.     Notwithstanding the aforementioned duty, at the time of delivery, Defendants breached the implied warranty of merchantability in that the Recalled Washing Machines were defective and posed a serious safety risk at the time of sale, would not pass without objection, are not fit for the ordinary purposes for which such goods are used (safely washing clothes in a residential setting), and failed to conform to the standard performance of like products used in the trade.

60.     Defendants knew or should have known that the Recalled Washing Machines pose a safety risk and are defective and knew or should have known that selling the Recalled Washing Machines to Plaintiffs and Class Members constituted a breach of the implied warranty of merchantability. In fact, upon information and belief, Lowe's, The Home Depot, Best Buy and Sears are still selling the Recalled Washing Machines without warning of the recall at the time of filing of this Complaint. Despite the recall notice and multiple lawsuits having been filed, Defendants continue to place the defective Recalled Washing Machines into the stream of commerce.

61.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and Class Members bought the Recalled Washing Machines without knowledge of their defects or their serious safety risks.

62.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and Class Members purchased unsafe products

which could not be used for their intended purpose including washing bedding, water-resistant items, and bulky items in a residential setting.

63.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and Class Members have suffered damages and did not receive the benefit of their bargain.

64.    Defendants were unjustly enriched by keeping the profits for the unsafe products while never having to incur the cost of repair, replacement, retrofit, or a recall.

65.    The defectively designed Recalled Washing Machines purchased by Plaintiffs and all other Class Members are unfit for their intended and ordinary purposes because they are prone to break and even explode when operated as instructed and intended by Defendants.

66.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and all the Class Members have suffered loss.

## SECOND CAUSE OF ACTION
## STRICT LIABILITY AGAINST ALL
## DEFENDANTS

67.    Plaintiff re-allege and incorporate the preceding paragraphs as if fully set forth herein.

68.    Samsung is engaged in the business of designing, manufacturing, distributing, advertising, marketing, promoting, and/or selling home appliances, and did design, manufacture, distribute, advertise, market, promote and/or sell the Defective Washing Machines at issue herein.

20

69. All Defendants are in the business of distributing, advertising, marketing, promoting, and/or selling home appliances, and did, distribute, advertise, market, promote and/or sell the Defective Washing Machines at issue herein.

70. The Defective Washing Machines were expected to, and did, reach Plaintiff and Class members without substantial change in the condition in which they were manufactured, sold and distributed.

71. The Defective Washing Machines were in a defective and unreasonably dangerous condition when they left Defendants' possession or control in that, under normal conditions, usage and applications, they could not withstand the use for which they were intended.

72. Plaintiff and Class members used the Defective Washing Machines in a manner reasonably intended by Defendants.

73. The Defective Washing Machines were defective because they were not safe for ordinary and intended use. Defendants failed to provide Plaintiff and Class members either directly or indirectly, with adequate and sufficient warning regarding the known or foreseeable risks and dangers inherent in the Defective Washing Machines. The Defective Washing Machines contained material design, materials, and manufacturing defects and were not reasonably safe due to such defects; the design, methods of manufacture, and testing of the Defective Washing Machines did not conform to generally recognized and prevailing standards or the state of the art in existence at the time the design was made and the Defective Washing Machines were manufactured. At the time the Defective Washing Machines left Defendants' control, the foreseeable risks

associated with the Defective Washing Machines' design exceeded the benefits associated with that design.

74.    Plaintiff and Class members have suffered damages, including but not limited to, property damage and other incidental and consequential damages as a direct and proximate result of the Defective Washing Machines.

75.    Defendants acted with malice, oppression and/or fraud, and in conscious and flagrant disregard of the safety of their consumers, by manufacturing and/or selling the Defective Washing Machines known to them to be defective and unreasonably dangerous. As alleged, Defendants knew or should have known that the latent and inherent defects in the Defective Washing Machines would cause the machines to fail, flood, damage the Defective Washing Machine and other property, and/or threaten the personal safety of consumers.   Defendants knew or were repeatedly informed of the serious defects in the Defective Washing Machines, yet failed to take any remedial action and instead continued to sell this defective product. Given Defendants' conscious disregard for the safety of the public, Plaintiff and Class members seek exemplary or punitive damages.

## THIRD CAUSE OF ACTION
## NEGLIGENCE AGAINST ALL
## DEFENDANTS

76.    Plaintiff re-allege and incorporate the preceding paragraphs as if fully set forth herein.

77.    Samsung owed a duty to Plaintiff and Class members to design, manufacture, produce, test, inspect, market, distribute, and sell the Defective Washing

Machines with reasonable care and in a workmanlike fashion, and had a duty to protect Plaintiff and Class members from foreseeable and unreasonable risks of harm. Samsung breached that duty by, among other things, defectively designing, manufacturing, testing, inspecting and distributing the Defective Washing Machines.

78.    The Retailers owed a duty to Plaintiff and Class members to inspect, market, distribute, and sell the Defective Washing Machines with reasonable care and in a workmanlike fashion, and had a duty to protect Plaintiff and Class members from foreseeable and unreasonable risks of harm. The Retailers breached that duty by, among other things, failing to use reasonable care in inspecting, distributing, and marketing the Defective Washing Machines.

79.    Defendants unreasonably failed to provide appropriate and adequate warnings and instructions about the defective Washing Machines, and this failure was a proximate cause of the harm for which damages are sought. In addition, at the time the Defective Washing Machines left their control, Defendants knew, or in the exercise of reasonable care should have known, the Defective Washing Machines posed a substantial risk of harm to the life and property of its customers. When the Defective Washing Machines left their control, Defendants knew, or in the exercise of reasonable care should have known, the Defective Washing Machines it designed, manufactured, produced, tested, and/or inspected, marketed, distributed, and/or sold, created an unreasonable safety risk and would fail to perform as intended.

80.    Samsung acted unreasonably in designing the Defective Washing Machines, and this conduct was a proximate cause of the harm for which damages are

23

sought.    Further, at the time the Defective Washing Machines left the control of Samsung, it unreasonably failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design that could then have been reasonably adopted and that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the Defective Washing Machines. Furthermore, at the time the Defective Washing Machines left the control of all Defendants, their design was so defective that a reasonable person, aware of the relevant facts, would not use or purchase a Defective Washing Machine of this design.

81.    Defendants knew, or in the exercise of reasonable care should have known, that the Defective Washing Machines created unreasonable safety risks.    Defendants further knew, or in the exercise of reasonable care should have known, that the Defective Washing Machines could cause property damage and personal injury.

82.    Based on this knowledge, Defendants had a duty to disclose to Plaintiff and Class members, the serious safety risks posed by the Defective Washing Machines and the defective nature of the Defective Washing Machines.

83.    Defendants had a further duty not to put the Defective Washing Machines on the market and has a continuing duty to replace the Defective Washing Machines, remove them from the market and seek an adequate recall or return of them from all consumers. Defendants have failed to do this in any meaningful way, and in fact, upon information and belief, the Defective Washing Machines can still be purchased from The Retailers today.

84.     Samsung failed to exercise reasonable care with respect to the design, manufacture, production, testing, inspection, marketing, distribution and sale of the Defective Washing Machines by, among other things, failing to design and manufacture the Defective Washing Machines in a manner ensuring that, under normal intended usage, they would not pose unreasonable risk to life and property.

85.     Defendants failed to exercise reasonable care in failing to warn, or to warn adequately and sufficiently, either directly or indirectly, Plaintiff and Class members of the defects in the Defective Washing Machines.

86.     Defendants failed to exercise reasonable care when it knew of the safety risks the Defective Washing Machines posed and actively concealed those risks from Plaintiff and Class members.

87.     Defendants failed to exercise reasonable care when it knew of the safety risks the Defective Washing Machines posed and failed to replace, repair or recall the Defective Washing Machines that it knew were unsafe and defective.

88.     As a direct and proximate result of Defendants' negligence, Plaintiff and Class members bought the Defective Washing Machines without knowledge of their defective nature or of their serious safety risks.

89.     As a direct and proximate result of Defendants' negligence, Plaintiff and Class members purchased unsafe products which could not be used for their intended use.

90.     As a direct and proximate result of Defendants' negligence, Plaintiff and Class members have suffered damages.

91.     Plaintiff and Class members seek to recover the damage caused by Defendants. Given Defendants' conscious disregard for the safety of Plaintiff and Class members, they also seek an award of exemplary damages.

## FOURTH CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY
### AGAINST SAMSUNG

92.     Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

93.     Samsung is, and at all times relevant was, a merchant with respect to washing machines.

94.     As set forth above, Samsung had knowledge of the defects alleged herein and that they pose serious safety risks to consumers like Plaintiffs and Class Members.

95.     Despite that knowledge, at all times relevant, Samsung expressly warranted in writing that its Washing Machines were "warranted by SAMSUNG against manufacturing defects in materials and workmanship."

96.     In its warranty to customers, Samsung also warrants in writing that it provides the following warranties: one year parts and labor; two years control board parts; three years stainless steel tub part; and ten years motor components.

97.     The Recalled Washing Machines have inadequate framing and dampening systems to withstand the extreme forces generated by the direct drive system that powers the machines' drums, often allowing the Recalled Washing Machines to fail when the tub becomes disassembled from the frame during a machine's "explosion." Moreover, the

26

unbalanced load warning is defective in that it fails to stop the Recalled Washing Machines' spin cycle before the machines explode.

98.    Alternatively, the limitations in Samsung's warranty are unconscionable as described herein.

99.    By selling Recalled Washing Machines containing these defects to consumers like Plaintiffs and Class Members after it gained knowledge of the defects, Samsung breached its express warranty to provide washing machines that were free from defects.

100.    Samsung also breached its express warranty to repair and correct material defects or component malfunctions in its Recalled Washing Machines when it failed to do so despite knowledge of the known defects and despite knowledge of alternative designs, alternative materials, and options for retrofits.

101.    The limited warranty of repair for the Recalled Washing Machines fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and Class Members whole and because Samsung has refused to provide the promised remedies within a reasonable time.

102.    Also, as alleged in more detail herein, at the time Samsung warranted and sold the Recalled Washing Machines, it knew that the Recalled Washing Machines did not conform to the warranties and were inherently defective, and Samsung wrongfully and fraudulently misrepresented and concealed material facts regarding its Washing Machines.

103.   Accordingly, Plaintiffs and Class Members are not limited to the limited warranty of "repair", and Plaintiffs and Class Members seek all remedies allowed by law.

104.   As more fully detailed above, Samsung knew that Plaintiffs' washing machine was susceptible to malfunction but failed to provide defect-free washing machines to Plaintiffs or Class Members, or to timely provide an adequate retrofit to remedy the Recalled Washing Machines.

105.   Samsung was provided with notice, and has been on notice, of the defects and of its breach of express written warranties through its own internal and external testing, as well as hundreds or thousands of consumer warranty claims reporting malfunctions in the Recalled Washing Machines, and customer complaints. Yet, Samsung failed to repair, replace, or retrofit the Recalled Washing Machines to ensure they were free of materials defects or component malfunctions as Samsung promised.

106.   As a direct and proximate result of Samsung's breach of its express warranty,

107.   Plaintiffs and Class Members have suffered damages.

108.   Samsung has been unjustly enriched by keeping the profits from the sale of its unsafe washing machines while never having to incur the cost of repair.

**FIFTH CAUSE OF ACTION**
**VIOLATIONS OF MAGNUSON-MOSS ACT**
**(15 U.S.C. §§ 2301-2312)–WRITTEN WARRANTY**
**AGAINST SAMSUNG**

109.   Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

28

110.    The Recalled Washing Machines are "consumer products," as that term is defined by 15 U.S.C. § 2301(1).

111.    Plaintiffs and Class Members are "consumers," as that term is defined by 15 U.S.C. § 2301(3).

112.    Samsung is a "warrantor" and "supplier," as those terms are defined by 15 U.S.C. § 2301(4) and (5).

113.    Samsung provided Plaintiffs and Class Members with "written warranties," as that term is defined by 15 U.S.C. § 2301(6).

114.    In its capacity as warrantor, and by the conduct described herein, any attempts by Samsung to limit the express warranties in a manner that would exclude coverage of the Recalled Washing Machines is unconscionable and any such effort to disclaim, or otherwise limit, liability for the Recalled Washing Machines is null and void.

115.    All jurisdictional prerequisites have been satisfied.

116.    By Samsung's conduct as described herein, including Samsung's knowledge of the defective Washing Machines and their action, and inaction, in the face of that knowledge, Samsung has failed to comply with its obligations under its written and implied promises, warranties, and representations.

117.    As a result of Samsung's breach of express warranties, Plaintiffs and Class Members are entitled to revoke their acceptance of the Recalled Washing Machines, obtain damages and equitable relief, and obtain attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

## SIXTH CAUSE OF ACTION
### VIOLATIONS OF MAGNUSON-MOSS ACT
### (15 U.S.C. § § 2301-2312)—IMPLIED WARRANTY AGAINST
### ALL DEFENDANTS

118.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

119.    Washing Machines are "consumer products," as that term is defined by 15 U.S.C. § 2301(1).

120.    Plaintiffs and Class Members are "consumers," as that term is defined by 15 U.S.C. § 2301(3).

121.    Samsung is a "warrantor" and "supplier," as those terms are defined by 15 U.S.C. § 2301(4) and (5).

122.    Lowe's, The Home Depot, Best Buy, and Sears are "warrantors" as that term is defined by 15 U.S.C. § 2301(5).

123.    Defendants provided Plaintiffs and Class Members with "implied warranties," as that term is defined by 15 U.S.C. § 2301(7).

124.    In their capacity as warrantors and by the conduct described herein, any attempt by Defendants to limit the implied warranties in a manner that would exclude coverage of the Recalled Washing Machines is unconscionable and any such effort to disclaim, or otherwise limit, liability for the Recalled Washing Machines is void.

125.    All jurisdictional prerequisites have been satisfied herein.

126.    By Defendants' conduct as described herein, including Defendants' knowledge of the defects contained within the Recalled Washing Machines and their

action, and inaction, in the face of that knowledge, Defendants have failed to comply with its obligations under their written and implied promises, warranties, and representations.

127.    As a result of Defendants' breach of implied warranties, Plaintiffs and Class Members are entitled to revoke their acceptance of the Recalled Washing Machines, obtain damages and equitable relief, and obtain attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

**SEVENTH CAUSE OF ACTION**
**UNJUST ENRICHMENT AGAINST**
**ALL DEFENDANTS**

128.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

129.    Defendants received, and continue to receive, proceeds from their sale of the defective Recalled Washing Machines, which were purchased by Plaintiffs and Class Members for an amount far greater than the reasonable value of such machines because of such machines' defects.

130.    In exchange for the purchase price paid by Plaintiffs and Class Members, Defendants provided the defective Recalled Washing Machines that are likely to fail within their useful lives and pose a material risk of "exploding." There is no reasonable or acceptable rate for washing machines to explode. Such defects render the Recalled Washing Machines unfit, and indeed unsafe, for their intended use.

131.    Plaintiffs and Class Members reasonably believed that the Recalled Washing Machines would function as advertised and warranted, and did not know, nor

could have known, that the Recalled Washing Machines contained latent defects at the time of purchase.

132.   Defendants know of and appreciate the benefit conferred by Plaintiffs and Class Members and has retained that benefit notwithstanding its knowledge that the benefit is unjust.

133.   Under the circumstances, permitting Defendants to retain the proceeds and profits from the sales of the defective Washing Machines described herein would be unjust.  Hence, Defendants should be required to disgorge this unjust enrichment.

## EIGHTH CAUSE OF ACTION
### VIOLATION OF STATE CONSUMER PROTECTION LAWS
### AGAINST ALL DEFENDANTS

134.   Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

135.   Defendants' deceptive trade practices in, *inter alia*, misrepresenting the quality and character of the Recalled Washing Machines, and selling the Recalled Washing Machines knowing same to be defective, violate the following state consumer statutes:

   a.   The Alabama Deceptive Trade Practices Act, Ala. Code §§ 8-19-5(2), (3), (5), (7), and (27), et seq.;

   b.   The Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. §§ 45.50.471-45.50.561;

   c.   The Arizona Consumer Fraud Act, A.R.S. § 44-1522;
   d.   The Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-107(a)(1)(10) and 4-88-108(1)(2), et seq.;

e.    The California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, et seq., and the California Unfair Competition Law, Cal. Bus. and Prof. Code, § 17200, et seq.;

f.    The Colorado Consumer Protection Act, Col. Rev. Stat. Ann. §§ 6-1-105(1)(b), (c), (e) and (g), et seq.;

g.    The Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110(b), et seq.;

h.    The Delaware Consumer Fraud Act, Del. Code Ann. Title 6 § 2513, et seq.;

i.    The District of Columbia Consumer Protection Act, D.C. Code §§ 28-3904(a), (d), (e), (f) and (r), et seq.;

j.    The Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.204(1), et seq.;

k.    The Georgia Fair Business Practices Act, Ga. Code Ann. §§ 10-1-393(a) and (b)(2), (3), (5), and (7), et seq.;

l.    The Hawaii Deceptive Trade Practices Act, Haw. Rev. Stat. Ann. §§ 481A-3(a)(5), (7) and (12), et seq., and the Hawaii Consumer Protection Act, Haw. Rev. Stat. Ann. § 480-2(a), et seq.;

m.    The Idaho Consumer Protection Act, Idaho Code §§ 48-603(5), (7), (17) and (18), et seq., and Idaho Code § 48-603C, et seq.;

n.    The Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 Ill. Stat. § 505/2, et seq., and the Illinois Uniform Deceptive Trades Practices Act, 815 Ill. Stat. §§ 510/2(a)(5), (7) and (12), et seq.;

o.    The Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-0.5-3(a) and (b)(1) and (2), et seq.;

p.    The Iowa Consumer Fraud Act, I.C.A. §§ 714H.3 and 714H.5, et seq.;

q.    The Kansas Consumer Protection Act, Kan. Stat. §§ 50-626(a) and (b)(1)(A)(D) and (b)(3), et seq.;

r.    The Kentucky Consumer Protection Act, Ky. Rev. Stat. §§ 367.170(1) and (2), et seq.;

33

s.    The Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § 51:1405(A), et seq.;

t.    The Maine Uniform Deceptive Trade Practices Act, 10 M.R.S.A. §§ 1212(1)(E) and (G), et seq., and the Maine Unfair Trade Practices Act, 5 M.R.S.A. § 207, et seq.;

u.    The Massachusetts Consumer Protection Act, Ma. Gen. Laws Ann. Ch. 93A § 2(a), et seq.;

v.    The Maryland Consumer Protection Act, Md. Code Commercial Law, §§ 13-301(1) and (2)(i)-(ii), and (iv), (5)(i), and (9)(i), et seq.;

w.    The Michigan    Consumer    Protection    Act,    M.C.P.L.A.    §§ 445.903(1)(c)(e), (s) and (cc), et seq.;

x.    The Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.44, subd. 1(5), (7) and (13), et seq., and the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69, subd. 1, and Minn. Stat. § 8.31, subd. 3(a);

y.    The Mississippi Consumer Protect Act, Miss. Code Ann. §§ 75-24-5(1), (2)(b), (c), (e), and (g), et seq.;

z.    The Missouri Merchandising Practices Act, Mo. Ann. Stat. § 407.020(1), et seq.;

aa.    The Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code Ann. § 30-14-103, et seq.;

bb. The Nebraska Consumer Protection Act, Neb. Rev. Stat. § 591602, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-302(a)(5) and (7), et seq.;

cc. The Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. Ann. §§ 598.0915(5) and (7), et seq.;

dd. The New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A:2(v) and (vii), et seq.;

ee. The New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2, et seq.;

ff. The New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-2(D)(5)(7) and (14) and 57-12-3, et seq.;

gg. The New York Business Law, N.Y. Gen. Bus. Law § 349(a);

hh. The North Carolina Unfair Trade Practices Act, N.C.G.S.A. § 75-1.1(a), et seq.;

ii. The North Dakota Unlawful Sales or Advertising Practices Act, N.D. Cent. Code § 51-15-02, et seq.;

jj. The Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. §§ 1345.02(A) and (B)(1) and (2), et seq.;

kk. The Oklahoma Consumer Protection Act, 15 O.S. §§ 753(5), (7) and (20), et seq.;

ll.     The Oregon Unfair Trade Practices Act, Or. Rev. Stat. §§ 646.608(1)(e)(g) and (u), et seq.;

mm. The Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-2(4)(v)(vii) and (xxi), and 201-3, et seq.;

nn.    The Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws §§ 6-13.1-1(6)(v), (vii), (xii), (xiii) and (xiv), et seq.;

oo. The South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-20(a), et seq.;

pp. The South Dakota Deceptive Trade Practices Act and Consumer Protection Act, S.D. Codified Laws § 37-24-6(1), et seq.;

qq. The Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-104(a), (b)(2), (3), (5), and (7), et seq.;

rr. The Texas Deceptive Trade Practices Consumer Protection Act, V.T.C.A., Bus. & C. §§ 17.46(a), (b)(5) and (7), et seq.;

ss. The Utah Consumer Sales Practices Act, Utah Code Ann. §§ 13-11-4(1), (2)(a), (b), and (i) et seq.;

tt. The Vermont Consumer Fraud Act, 9 V.S.A. § 2453(a), et seq.;

uu. The Virgin Islands Consumer Protection Law, V.I. Code Ann. tit. 12A, § 101, et seq.;

vv. The Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-200(A)(5)(6) and (14), et seq.;

ww. The Washington Consumer Protection Act, Wash. Rev. Code § 19.86.020, et seq.;
xx. The West Virginia Consumer Credit and Protection Act, W.V.A. Code § 46A-6-104, et seq.; and

yy. The Wyoming Consumer Protection Act, Wyo. Stat. Ann. §§ 40-12-105(a), (i), (iii) and (xv), et seq.

136.    By this Cause of Action, Plaintiffs plead on behalf of the Class violations of all the foregoing consumer and deceptive trade practice laws.

### NINTH CAUSE OF ACTION
### FRAUD AGAINST SAMSUNG

137.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

138.    Upon discovering that her Samsung washing machine was subject to recall, Plaintiffs contacted Samsung to repair or replace the washing machine. Samsung represented in their recall notice that they would repair any Recalled Washing Machine free of charge to the consumers, including Plaintiffs.

139.    The truth is that Samsung cannot repair these washing machines. They can perform a retrofit that will reinforce the washing machines, but it will not allow consumers to use these washing machines for the purposes for which they were advertised and purchased. In addition, as part of their agreement with the Consumer Protection Safety Commission, any washing machine that cannot be repaired must be

replaced by Samsung at no cost to the consumer. As a result, Samsung is doing everything in its power to keep consumers from accepting the repair option, including scheduling repairs and then having them cancelled, failing to return phone calls for those who wish to schedule repairs, and other stalling tactics, in order to force consumers to accept the rebate option, thereby freeing Samsung from the obligation to replace the washing machines once it becomes apparent that the repair does not fully fix the problem.

140.   Upon information and belief, Samsung had no intention of keeping their representation that they would repair Plaintiffs' defective washing machines, since it is in Samsung's financial interest to force Plaintiffs and other Class Members to use Samsung's proffered rebate to purchase a new Samsung washing machine, or to use Samsung's proffered rebate of a lesser amount to purchase another brand of washing machine. Samsung is motivated by the fact that the cost of the rebate is, on information and belief, less expensive than the cost of repair to the Recalled Washing Machines.

141.   In addition, Samsung is unable to repair the Recalled Washing Machines. Even after the retrofit is done and the top of each washing machine is reinforced, consumers are still unable to use their washing machines as intended. As a result, Samsung would owe every consumer who has their Recalled Washing Machine repaired a full refund or a new washing machine immediately after the repair has been completed. *See* http://www.click2houston.com/consumer/feds-say-samsung-not-following-consumer-product-safety-commission-agreement.

142.   At the time Samsung made the representation that they would repair their Recalled Washing Machines, they were fully aware of the cost savings Samsung would

benefit from by "encouraging" owners of the Recalled Washing Machines, including Plaintiffs, to take the proffered rebate rather than having their existing washing machine repaired. As a result, Samsung intentionally made it difficult, if not impossible, for Plaintiffs and other Class Members to obtain retrofits for their Samsung washing machines, hoping consumers would choose to accept the rebate option instead of a retrofit.

143.    Even after McCabe received the repair and it did not fix her Recalled Washing Machine, Samsun refused to replace her defective Recalled Washing Machine. McCabe is now left with a dangerous product that is unusable for its intended purpose.

144.    As a result of Samsung's fraud, Plaintiffs and Class Members are entitled to full compensation for the loss of their Recalled Washing Machines, including time lost in seeking to have the Recalled Washing Machines repaired, and time and money spent finding other means to wash their belongings while they waited for Samsung to repair their Recalled Washing.

**TENTH CAUSE OF ACTION**
**Violation of the Maine Unfair Trade**
**Practices Act, 5 Me. Rev. Stat. § 205A,**
***et seq.*, and Maine Uniform Deceptive**
**Trade Practices Act, Me. Rev. Stat.**
**Ann. 10, § 1211, *et seq.* on behalf of the**
**Maine Subclass**

145.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

146.    Defendants unfairly, unconscionably, and deceptively advertised, marketed, sold, and represented the Recalled Washing Machines as safe and effective to members of the Maine Subclass.

147.    Before they advertised, marketed, sold and represent the Recalled Washing Machines, Defendants knew or should have known of the defective nature and unreasonable dangers posed by the Recalled Washing Machines.

148.    The Maine Subclass purchased and used the Recalled Washing Machines for personal use and thereby suffered ascertainable losses as a result of Defendants' actions in violation of the consumer protection laws.

149.    Had Defendants not engaged in the deceptive conduct described herein, Plaintiffs and the Maine Subclass would not have purchased and/or paid for the Recalled Washing Machines and would not have incurred the related costs and injuries.

150.    Defendants engaged in the deceptive conduct while at the same time obtaining, under false pretenses, moneys from the injured Plaintiffs and Maine Subclass that would not have been paid had Defendants not engaged in unfair and deceptive conduct.

151.    Unfair methods of competition or deceptive acts or practices that were proscribed by law include, *inter alia*, the following:

- Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have;

- Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

- Representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

- Knowingly making false or misleading statements of fact concerning the need for parts, replacement, or repair service;

- Representing that a guaranty or warranty confers or involves rights or remedies which it does not have or involve; and

- Failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

*See*, Me. Rev. Stat. tit. 10, § 1212, *et seq.*; 5 Me. Rev. Stat. § 205A, *et seq.*

152. Plaintiff and the Maine Subclass were injured by the cumulative and indivisible nature of Defendants' conduct. The cumulative of Defendants' conduct directed at Plaintiff and the Maine Subclass was to create demand for and sell the Recalled Washing machines. Each aspect of Defendants' conduct combined to artificially create sales of the Recalled Washing Machines.

153. Defendants have a statutory duty to refrain from unfair or deceptive acts or trade practices in the design, development, manufacture, promotion, and sale of the Recalled Washing Machines.

154. Had Defendants not engaged in the deceptive conduct described above, the injured Plaintiff and Maine Subclass would not have purchased and/or paid for the Recalled Washing Machines and would not have suffered the related damages.

155. Defendants' deceptive, unconscionable, or fraudulent representations and material omissions to Plaintiff and the Maine Subclass constituted unfair and deceptive acts and trade practices in violation of the state consumer protection statutes listed.

156. Defendants' actions, as complained of herein, constitute unfair competition or unfair, unconscionable, deceptive or fraudulent acts, or trade practices in violation of state consumer protection statutes.

157. Defendants have engaged in unfair competition or unfair or deceptive acts or trade practices or have made false representations in violation of the Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.*

158. Under the statute listed above to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising, Defendants are the suppliers, manufacturers, advertisers, and sellers, who are subject to liability under such legislation for unfair, deceptive, fraudulent and unconscionable consumer sales practices.

159.    Defendants violated the statutes that were enacted in this state to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising, by knowingly and falsely representing that the Recalled Washing Machines were fit to be used for the purpose for which they were intended, when in fact the Recalled Washing Machines were defective and dangerous, and by other acts alleged herein. These representations were made in uniform promotional materials.

160.    The actions and omissions of Defendants alleged herein are uncured or incurable deceptive acts under the statutes enacted in the states to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising.

161.    Defendants had actual knowledge of the defective and dangerous condition of the Recalled Washing Machines and failed to take any action to cure such defective and dangerous conditions.

162.    The injured Plaintiffs and the Maine Subclass relied upon Defendants' misrepresentations and omissions in determining which washing machine to purchase.

163.    By reason of the unlawful acts engaged in by Defendants, and as a direct and proximate result thereof, Plaintiffs and the Maine Subclass has suffered ascertainable losses and damages.

164.    As a direct and proximate result of Defendants' violations of the states' consumer protection laws, the injured Plaintiff and Maine Subclass has sustained economic losses and other damages and is entitled to statutory and compensatory, damages in an amount to be proven at trial.

42

165.   As specifically described in detail above, Defendants knew that the Recalled Washing Machines were defective, could not perform for the purposes they were marketed or intended and were dangerous for use by Plaintiffs and the Maine Subclass.

166.   As a direct and proximate result of Defendants' representations, Plaintiffs and the Maine Subclass has experienced and/or will experience significant damages, including but not limited to physical injuries and the medical bills resulting therefrom, loss of the use of their Recalled Washing Machines, time spent seeking to have their Recalled Washing Machines replaced, and money spent renting a washing machine or using a laundromat while their Recalled Washing Machine was unusable.

167.   Pursuant to the Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.*, Plaintiffs and the Maine Subclass request attorneys' fees and costs.

**WHEREFORE,** Plaintiffs individually and on behalf of the above defined Class, by and through counsel, pray the Court grant the following relief:

A.   An Order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.   An Order appointing McCabe as representative for the Class and appointing her counsel as lead counsel for the Class;

C.   An order awarding Plaintiffs and all other Class Members damages in an amount to be determined at trial for the wrongful acts of Samsung described herein;

43

D.      An Order enjoining Samsung, Lowe's, The Home Depot, Best Buy, and Sears, their agents, successors, employees, and other representatives, from engaging in or continuing to engage in the manufacture (in the case of Samsung), marketing, and sale of the defective Recalled Washing Machines; requiring Samsung, Lowe's, The Home Depot, Best Buy and Sears to issue corrective actions including notification, recall, service bulletins, and fully-covered replacement parts and labor, or replacement of the Recalled Washing Machines; and requiring Samsung, Lowe's, The Home Depot, Best Buy, and Sears to preserve all evidence relevant to this lawsuit and to notify Recalled Washing Machine owners, with whom it comes in contact of the pendency of this and related litigation;

E.      Restitution as authorized by law;

F.      Payment to the Class of all damages associated with the replacement of the defective products and parts, in an amount to be proven at trial;

G.      Payment to the Class of all damages associated with lost time in attempting to get Samsung to abide by the terms of the recall;

H.      Payment to the Class of all damages associated with the Class's inability to use their Recalled Washing Machines such as fees from renting a washing machine or using a laundromat;

I.      An assessment of punitive damages, consistent with the actual harm Samsung has caused and the reprehensibility of its wanton and willful conduct, and the need to punish and deter such conduct;

J.      An order awarding attorney's fees pursuant to applicable Federal and State law;

K.      Interest as provided by law, including but not limited to pre judgment and post-judgment interest as provided by rule or statute; and

L.      Any and all other and further relief as this Court deems just, equitable, or proper.

### JURY TRIAL DEMANDED

June 28, 2017

_____

Stephen C. Smith    Bar No.  8720
LIPMAN & KATZ, PA
PO Box 1051
Augusta ME 04332-1051
207-622-3711

William B. Federman
*Pro hac to be filed*
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Tel: 405.235.1560
Fax: 405.239.2112

-and-

2926 Maple Ave., Suite 200
Dallas, TX 75201
wbf@federmanlaw.com

*Attorneys for Plaintiff*

45